2014 UT App 213

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
KARL MARTIN HEGBLOOM,
Defendant and Appellant.

Opinion
No. 20120264-CA
Filed September 11, 2014

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 111903279

Peter A. Daines, Isaac E. McDougall, and John B.
Plimpton, Attorneys for Appellant

Sean D. Reyes and John J. Nielsen,
Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE JOHN A. PEARCE and SENIOR JUDGE JUDITH M. BILLINGS
concurred.[1]

VOROS, Judge:

¶1      Karl Martin Hegbloom appeals from his conviction after entering a conditional guilty plea to two counts of attempted violation of a protective order. He contends on appeal that the protective order he disobeyed was issued in violation of his due process rights and thus void. And because it was void, he argues,

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

he may challenge it collaterally in this criminal proceeding. We affirm.

BACKGROUND

¶2     Hegbloom and K.M. shared custody of their child, but custody exchanges proved difficult for both parents. K.M. eventually obtained an ex parte civil protective order against Hegbloom.

¶3     Before the hearing on the protective order, Hegbloom filed a written response. Both parents appeared pro se at the hearing. Hegbloom brought evidence, some of it unknown to K.M., to present at the hearing. Rather than receive the evidence, the commissioner proceeded by proffer. Hegbloom then orally requested a "formal evidentiary hearing." The commissioner responded, "Once I make my ruling, if there's an objection you . . . can object and take it before the judge . . . [who] can decide whether there [will] be a full formal evidentiary hearing." Insisting that without the rejected evidence he "ha[d] no case," Hegbloom again requested a formal evidentiary hearing; the commissioner again denied the request.

¶4     At the conclusion of the hearing, the commissioner asked Hegbloom if he agreed to the terms the guardian ad litem had proposed for his protective order. He replied, "I . . . agree to those terms." (Omission in original.) The commissioner then stated that she would recommend an extension of the protective order against Hegbloom on those terms. However, Hegbloom again requested an evidentiary hearing. The commissioner responded, "You can object to my recommendations if you believe that they were inappropriate. That will go to the judge and you can make that request . . . ." Hegbloom specifically asked if his objection needed to be in writing, to which the commissioner replied that it did. Hegbloom then told the commissioner that his written submissions included a request for a formal evidentiary hearing. The commissioner responded that she had already denied that, adding,

"You may now object and we'll make that request," but that his objection "need[ed] to be in writing."

¶5 Hegbloom did not file a written objection to the commissioner's recommendation. Without holding an evidentiary hearing, the district court followed the recommendation and entered a permanent protective order against Hegbloom. Hegbloom did not appeal.

¶6 A few months later, K.M. reported Hegbloom to the police for multiple violations of the order. She alleged that he had sent her multiple text messages and had come to her apartment "dressed as a clown." He was charged with nine violations of the protective order, all third degree felonies.

¶7 In the criminal court, Hegbloom contended that the protective order had been entered in violation of his due process rights, rendering it void. The court ruled that Hegbloom's oral objection to the commissioner's recommendation was not a valid objection and that the entry of the order did not violate his due process rights. The court stated, "The problem here is that Mr. Hegbloom did not follow the statutory requirements . . . even though the commissioner repeatedly gave him that information." The criminal court concluded that the commissioner had explained to Hegbloom how to object to the commissioner's recommendation but that Hegbloom had failed to do so.

¶8 Hegbloom entered conditional guilty pleas to two counts of attempted violation of a protective order, class A misdemeanors, reserving the right to appeal the district court's ruling denying his motion to declare the protective order void.

ISSUE AND STANDARD OF REVIEW

¶9 Hegbloom challenges his conviction on the ground that the protective order was void. It was void, he argues, because it was entered in violation of his due process rights, specifically, his right to an evidentiary hearing. And because the order was void, he

argues, he may challenge it collaterally in this criminal proceeding. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *State v. Martinez*, 2013 UT 23, ¶ 6, 304 P.3d 54 (citation and internal quotation marks omitted). Similarly, "[w]hether a judgment is void or voidable is a question of law." *Nebeker v. Summit County*, 2014 UT App 137, ¶ 9.


ANALYSIS

¶10    The threshold question here is whether Hegbloom may, in this criminal proceeding, collaterally attack the protective order entered in the prior civil proceeding. Collateral attacks are disfavored. "With rare exception, when a court with proper jurisdiction enters a final judgment . . . that judgment can only be attacked on direct appeal." *State v. Hamilton*, 2003 UT 22, ¶ 25, 70 P.3d 111. An attack "is regarded as collateral if made when the judgment is offered as the basis of a claim in a subsequent proceeding." *Olsen v. Board of Educ.*, 571 P.2d 1336, 1338 (Utah 1977).

¶11    A void judgment "is open to collateral attack." *Farley v. Farley*, 431 P.2d 133, 137 (Utah 1967); 46 Am. Jur. 2d *Judgments* § 29 (2006). But "[t]he concept of a void judgment is narrowly construed in the interest of finality." *Brimhall v. Mecham*, 494 P.2d 525, 526 (Utah 1972). Two circumstances may render a judgment void. First, a "judgment [is] void on its face for lack of jurisdiction in the court." *Bowen v. Olsen*, 246 P.2d 602, 605 (Utah 1952). Second, a judgment is void when the court entering the judgment "acted in a manner inconsistent with due process of law." *Brimhall*, 494 P.2d at 526. Hegbloom relies on the second basis.[2]

---

2. Although Hegbloom nominally mentions the Utah Constitution, he does not set forth "a unique state constitutional analysis." *See State v. Worwood*, 2007 UT 47, ¶ 19, 164 P.3d 397. Accordingly, we decline to separately consider any state constitutional claim. *See id.*

¶12 "'The purpose of due process is to prevent fundamental unfairness.'" *State v. Parker*, 872 P.2d 1041, 1048 (Utah Ct. App. 1994) (quoting *State v. Maestas*, 815 P.2d 1319, 1325 (Utah Ct. App. 1991)); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (stating that the aim of due process is "'to prevent fundamental unfairness'" (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941))). Due process cannot be confined to a specific formula but rather is "'flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

¶13 At a minimum, due process requires "[t]imely and adequate notice and an opportunity to be heard in a meaningful way." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 50, 299 P.3d 990 (alteration in original) (citation and internal quotation marks omitted). The opportunity to be heard in a meaningful way includes the "opportunity to present evidence and argument on that issue before decision." *Plumb v. State*, 809 P.2d 734, 743 (Utah 1990).

¶14 Hegbloom does not claim that he lacked actual notice of the protective-order proceeding. Rather, he contends that he was denied the opportunity to be heard. This denial, he reasons, took the form of a requirement that he file a written objection to the commissioner's recommendation after the conclusion of the hearing before the commissioner. And because the district court entered the protective order in violation of his due process rights, Hegbloom may, he asserts, collaterally attack it.[3]

¶15 We do not agree that the civil protective order is subject to collateral attack. To begin with, the case law does not support Hegbloom on this point. Hegbloom cites many Utah cases stating

---

3. Hegbloom does not assert that, had he objected to the commissioner's finding in the manner she prescribed, the district court would have denied him an evidentiary hearing. Nor does he assert that the alleged procedural error would not have been corrected on appeal had he appealed.

in the abstract the rule that a denial of due process renders a judgment void and hence subject to collateral attack. But none of these cases address the situation before us here: the wrongful denial of an evidentiary hearing.[4]

---

4. *See, e.g.*, *State v. Candland*, 2013 UT 55, ¶¶ 13, 25, 309 P.3d 230 (rejecting, on direct appeal, a challenge to guilty plea); *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶¶ 37, 44, 266 P.3d 702 (holding, on direct appeal, that the federal Parental Kidnapping Prevention Act does not deprive Utah courts of subject matter jurisdiction where another state first exercised jurisdiction over the adoption); *Garcia v. Garcia*, 712 P.2d 288, 291 n.5 (Utah 1986) (holding that divorce decree entered without effective service on respondent should be set aside under rule 60(b) of the Utah Rules of Civil Procedure); *Brimhall v. Mecham*, 494 P.2d 525, 526 (Utah 1972) (refusing rule 60(b) relief to a wife who asserted the judgment against her was void on the ground that the appearance of the attorney employed by her husband was unauthorized to represent her interests); *Utah Power & Light Co. v. Richmond Irrigation Co.*, 13 P.2d 320, 324 (Utah 1932) (holding, on direct appeal, that the mere fact that a judgment may be erroneous does not render it void); *Bangerter v. Petty*, 2010 UT App 49, ¶ 14, 228 P.3d 1250 (holding that an incorrect property description in a sheriff's deed is a "minor irregularity" that did not render the sale void and thus subject to collateral attack); *State v. Rawlings*, 893 P.2d 1063, 1071 (Utah Ct. App. 1995) (holding that because the defendant was not given proper notice of a probation extension hearing, the district court lacked the authority to extend the defendant's probation); *Jenkins v. Weis*, 868 P.2d 1374, 1383 (Utah Ct. App. 1994) (holding void, on direct appeal, a district court's sua sponte dismissal of a cause of action without notice or hearing); *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 385 (Utah Ct. App. 1991) (affirming, on direct appeal, the denial of relief under rule 60(b)(5) on the ground that "[n]othing in the record indicates that the court lacked jurisdiction over the subject matter or over the parties or was otherwise incompetent to render judgment"); *Workman v. Nagle Constr., Inc.*, 802 P.2d 749, 753 (Utah Ct. App. 1990) (holding void, on direct

(continued...)

¶16 Indeed, Hegbloom cites no Utah case upholding a collateral attack. He does cite a Utah case allowing a challenge to a void judgment under rule 60(b)(5) of the Utah Rules of Civil Procedure, but that case involved lack of service, not lack of an evidentiary hearing. *See Garcia v. Garcia*, 712 P.2d 288, 291 & n.5 (Utah 1986) (holding that a divorce decree entered without effective service on the respondent should be set aside under rule 60(b)(5)). Hegbloom cites one non-Utah case permitting collateral attack on due process grounds, but its rationale relies on lack of notice, not lack of an evidentiary hearing. *See Olson v. State*, 77 P.3d 15, 16–18 (Alaska Ct. App. 2003) (holding that a defendant who had "never received notice of the hearing" on a petition for a long-term protective order could not be convicted for violating it).

¶17 Hegbloom attempts to frame his denial of an evidentiary hearing as a denial of notice. But he received notice of both the ex parte order and the extension of that order. He attended the hearing and even challenged the grounds for the order to the extent possible without calling witnesses. But he did not seek an evidentiary hearing in district court as instructed by the commissioner. Hegbloom now contends that the commissioner's instructions were erroneous under rule 7 of the Utah Rules of Civil Procedure and section 78B-7-107(1)(f) of the Utah Code. But even if Hegbloom is correct, we cannot agree that the error denied him *notice*. We thus reject his argument that "the fact that he was deprived of an opportunity to be meaningfully heard meant that he never received sufficient notice and the issuing court lacked jurisdiction."

¶18 Hegbloom's claim finds the strongest support in *Wiscombe v. Wiscombe*, 744 P.2d 1024, 1025 (Utah Ct. App. 1987). The basic facts of *Wiscombe* are similar to those before us. In *Wiscombe*, a

---

4. (...continued)
appeal, a judgment against members of a class in a class action where "nothing in the record indicates that the members of the would-be class . . . were notified that this action had been brought to adjudicate their claims").

divorced couple attended a proffer hearing before a domestic-relations commissioner. *Id.* at 1024–25. The husband made no written objection to the commissioner's recommendation, but claimed to have orally objected, a claim the wife challenged. *Id.* at 1025. The district court found that the husband had failed to properly object to the recommendation of the commissioner and entered judgment consistent with the commissioner's recommendation. *Id.* The husband directly appealed to this court. *Id.*

¶19    We held, "Given the lack of opportunity for a complete evidentiary hearing in proceedings before the domestic relations commissioner, we believe in this case that procedural due process requires that any doubts about compliance with Rule 8(d) ought to be resolved in favor of [the husband], who was seeking a full evidentiary hearing before [the district court]." *Id.* "One of the fundamental requisites of due process," we noted, "is the opportunity to be fully heard." *Id.* at 1025–26. And where "it was not clear that [the husband] waived his due process right to a full hearing," the district court should have granted one. *Id.* at 1026.

¶20    Our opinion in *Wiscombe* aids Hegbloom to this extent: we classified the wrongful denial of an evidentiary hearing on the protective order as a violation of due process. Crucially, though, *Wiscombe* involved a direct appeal. Even in dicta, it never mentions voidness, jurisdiction, or collateral attacks. And unlike the husband in *Wiscombe,* Hegbloom did not appeal the judgment of the district court in the protective-order case. Instead, he violated the order and now belatedly seeks to attack it collaterally . We are unwilling to extend *Wiscombe*'s holding beyond its facts and its stated rationale. *Wiscombe* does ground its holding on due process. But as explained above, our reading of the cases suggests that not every due process violation rendering a judgment erroneous necessarily renders it void as well.

¶21    Had Hegbloom lacked notice of the protective-order proceeding, we might well agree that the resulting order was void. A litigant denied notice of a proceeding has no opportunity to

bring an appellate challenge; to deny such a litigant the right to collaterally challenge the judgment entered without notice—and thus without an opportunity to be heard—would indeed be fundamentally unfair. Denying a collateral challenge to that judgment would foreclose any opportunity to be heard in connection with the entry of the order.

¶22    But Hegbloom stands on different footing. He received notice, attended the hearing before the commissioner, stated his intention to seek an evidentiary hearing, and was instructed how to do so. He does not claim that he lacked notice of entry of the district court judgment or was prevented from bringing a direct appeal. The husband in *Wiscombe* appealed the judgment entered against him. Hegbloom could have done likewise. After all, "[t]he proper method for contesting an adverse ruling is to appeal it, not to violate it." *State v. Clark*, 2005 UT 75, ¶ 36, 124 P.3d 235. We see nothing fundamentally unfair in not allowing a litigant to challenge collaterally a judgment he could have challenged directly had he chosen to do so.

¶23    In sum, once the protective order was entered against Hegbloom and with his knowledge, he was obligated either to appeal it or obey it. He was not free to disobey it and then challenge it collaterally in the criminal proceeding. Whatever errors were or were not made by the commissioner or the district court in the protective-order proceeding did not render the judgment entered there void and subject to collateral attack.

CONCLUSION

¶24    The judgment of the district court is affirmed.